Michael R. Reese (SBN 206773)
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
Email: *mreese@reesellp.com*

George V. Granade (SBN 316050)
**REESE LLP**
8484 Wilshire Boulevard
Los Angeles, California 90211
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*ggranade@reesellp.com*

Kenneth D. Quat (*pro hac vice* to be filed)
**QUAT LAW OFFICES**
929 Worcester Road
Framingham, Massachusetts  01701
Telephone: (508) 872-1261
Email:  *ken@quatlaw.com*

*Counsel for Plaintiff Peter Tucker and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER TUCKER, individually, and on behalf of a class of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>POST CONSUMER BRANDS, LLC<br><br>Defendant. | Case No.19-cv-3993<br><br>**AMENDED**<br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Peter Tucker ("Plaintiff") bring suit on behalf of himself and all persons similarly situated who purchased one or more varieties of a breakfast cereal known as "Honey Bunches of Oats," a consumer product manufactured and marketed by Defendant.  By making false, deceptive, and misleading representations, and by omitting material information, Defendant's branding and packaging of these cereals convey that honey is the primary sweetener, or at the very least is a significant sweetener.  In truth, however, the cereals are sweetened primarily with sugar, corn syrup, and other refined substances, and contain only miniscule amounts of honey.  Plaintiff and all members were harmed by paying more to purchase the cereals than they would have been willing to pay had their honey content not been misrepresented by Defendant.

## PARTIES

1.   Plaintiff Peter Tucker is an individual who resides in Lafayette, California.

2.      Defendant Post Consumer Brands, LLC is a Delaware limited liability company with a principal place of business at 20802 Kensington Boulevard, Lakeville, Minnesota 55044-8052.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), the Class Action Fairness Act ("CAFA"), as the matter in controversy exceeds the sum of $5,000,000 (five million dollars) exclusive of interest and costs, and at least one member of the putative class is a citizen of a state different from Defendant.  None of the exceptions of 28 U.S.C. §1332(d) are applicable.

4.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. §1391(b)(2) as a substantial part of the conduct complained of occurred in this district.

AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STATEMENT OF FACTS

### A.   The negative health effects of consuming excessive amounts of sugar

5.     In 2014, the National Institutes of Health cautioned: "experts agree that Americans eat and drink way too much sugar, and it's contributing to the obesity epidemic.  Much of the sugar we eat isn't found naturally in food but is added during processing or preparation." https://newsinhealth.nih.gov/2014/10/sweet-stuff.   The NIH noted further: "[s]everal studies have found a direct link between excess sugar consumption and obesity and cardiovascular problems worldwide." *Id.*

6.     There has long been a consensus among doctors and nutritionists that "[e]ating too much sugar contributes to numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of certain cancers' relationship to obesity."   http://www.chicagotribune.com/lifestyles/health/ct-sugar-addictive-20171218-story.html

7.     In addition, "there is emerging research that suggests high-sugar diets may increase the risk of developing [dementia]."   http://theconversation.com/yes-too-much-sugar-is-bad-for-our-health-heres-what-the-science-says-92030.

### B.  As part of a societal trend toward consuming healthier foods and natural foods, avoidance of added sugar has been and remains a significant consumer preference, with consumers strongly favoring honey as a sugar substitute.

8.     At least in part due to growing consumer awareness of health problems caused by excessive sugar consumption, in recent years consumers have shown a distinct preference for products with little or no added sugar as well as for "natural" products.

9.     In August, 2016, an article in "Prepared Foods" magazine noted that "[o]ngoing concerns about obesity and sugar intake have driven interest in reduced sugar and diet drinks in recent years."   https://www.preparedfoods.com/articles/118643-trends-in-sugar-reduction-and-natural-sweeteners.

10.     As another observer of the food industry explained in May, 2017: "[h]ealth concerns and better educated consumers are propelling the demand for sugar reduction across food and

beverage categories. . . Sugar reduction will be one of the top marketing claims prominently featured on products in the coming year. . ." https://www.foodinsiderjournal.com/formulation-solutions/less-more-sugar-reduction-less-sodium-low-fodmaps-food-beverage.

11.    Similarly, an article in the February 28, 2018, edition of "Food Business News" reported that "[s]peakers addressing consumer trends at the International Sweetener Colloquium in Orlando on February 13 said sugar avoidance was a macro trend 'that is here to stay and will only increase. . .'"

12.    The same article noted that "I.R.I. [Information Resources, Inc.] surveys show that 58% of consumers across generations are avoiding sugar. . . [and of] those avoiding sugar, 85% are doing so for health reasons and 58% for weight concerns."

13.    The same article reported that surveys showed that "[c]onsumers rated honey at 73% 'better for you than sugar."

14.    And, in 2018, "Prepared Foods" magazine noted survey findings that: (i) "93% of consumers consider honey to be a natural sweetener;" (ii) "58% of consumers with one or more children look for honey on the product label;" (iii) "60% of consumers between the ages of 18 and 34 look for honey on the product label; and (iv) about half of consumers would pay at least 5% more for food bars, ready-to-drink tea, and yogurt primarily sweetened with honey." https://www.preparedfoods.com/articles/118643-trends-in-sugar-reduction-and-natural-sweeteners

15.    Referring to food products perceived as healthier, the Huffington Post reported that "[a]ccording to a 2015 Nielsen survey of 30,000 people, 90% of shoppers are willing to pay more for the added quality and benefits." https://www.huffingtonpost.com/brian-kennell/healthy-food-trends-drive_b_8222388.html.

16.    Honey is a naturally occurring substance and, unlike sugar, has amounts of nutrients such as vitamins, minerals, enzymes, and antioxidants.    In addition, honey has a lower glycemic index than sugar, meaning that it causes slower fluctuations in blood glucose levels (often referred to as "blood sugar") and therefore in insulin levels as well.  Rapid spikes of blood glucose levels lead to quick spurts of energy followed by sharp declines in energy characterized by tiredness, headaches, and difficulties in concentrating ("low blood sugar").

17.     Honey is much sweeter than sugar and therefore less is needed to achieve the same level of sweetness.

18.     Based on the common marketplace perception that honey is healthier and more natural than sugar, consumers place a greater value on products that are sweetened with honey instead of sugar and are willing to pay a higher price for such products.

**C.  Defendant's false, deceptive and misleading branding and packaging of "Honey Bunches of Oats" cereals.**

19.     One of Defendant's major line of breakfast products is "Honey Bunches of Oats" cereals (sometimes referred to herein as "the Products").  In 2017, "Honey Bunches of Oats" was the third largest selling pre-made breakfast cereal in the United States.

20.     "Honey Bunches of Oats" cereals are sold to the public in rectangular boxes containing 13 ounces or more of cereal and individual serving "to go" cups containing 2.25 ounces of cereal.

21.     The front of each "Honey Bunches of Oats" product is identical:

(a)     The package is dominated by a large yellow-orange circle simulating the sun with rays radiating outward.

(b)     Emblazoned around the circumference of the circle are the words "HONEY BUNCHES OF OATS," in the center of which is a large, wooden honey dipper covered with and dripping honey.

(c)     Toward the bottom of the cereal boxes and cups is the outline of a bee trailing a broken line indicating flight.

22.     An example of the front of an "Honey Bunches of Oats cereal box is shown here:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18   23. An example of the front of a "Honey Bunches of Oats" "to go" cup is shown here:

19
20
21
22
23
24
25
26
27
28



AMENDED CLASS ACTION COMPLAINT

24. In addition, the top of each "to go" cup contains the same labeling and design:



25.   Thus, the branding and packaging of the Products convey the clear message that honey is the primary sweetener or – at a minimum - that honey is a significant sweetener compared to sugar and other refined substances that are perceived by consumers to be unhealthy or less healthy.  Indeed, a consumer survey conducted in August of 2019 of more than 400 consumers evidences this fact. When shown the front of the cereal package as depicted in paragraph 22, above, and asked what the cereal's primary sweetener was based upon the packaging, no less than 68% of the respondents (or 288 of the consumers surveyed) answered that honey was the primary sweetener.  Unfortunately for consumers, this message that honey is the primary sweetener is simply untrue.

26.   Sweeteners contained in "Honey Bunches of Oats" cereals are:

(a)  Sugar (often referred to as "white" or "regular" sugar), which is made from juice

extracted from sugar beet and sugar cane plants that goes through multiple stages of

processing and refinement;

(b) Brown sugar, which is a combination of white sugar and molasses;

(c) Corn syrup, which is a processed sugar product derived from corn starch;

(d) Malted barley syrup, which is a processed sugar product produced by cooking sprouted barley malt;

(e) Molasses, which in its most common form is the thick, brown syrup that results from processing sugar cane or sugar beets into sugar.

(f) Honey, which is made by bees from the nectar of flowering plants.

27.    According to Defendant's website, the "Honey Bunches of Oats" cereals, along with their ingredients (in descending order of predominance, with sweeteners highlighted) are:

"Honey Bunches of Oats with Crispy Almonds"

Corn, Whole Grain Wheat, **Sugar,** Whole Grain Rolled Oats, **Brown Sugar**, Almonds, Rice, Canola Oil, Wheat Flour, Malted Barley Flour, **Corn Syrup**, Salt, Whey (From Milk), **Malted Corn And Barley Syrup**, **Wildflower Honey**, Caramel Color, Cinnamon, Natural And Artificial Flavor, Annatto Extract (Color), Bht Added To Packaging Material To Preserve Product Freshness.


"Honey Bunches of Oats with Banana Bunches and Almonds"

Corn, Whole Grain Wheat, **Sugar**, Whole Grain Rolled Oats, Almonds, Rice, Canola Oil, **Corn Syrup**, Dried Bananas, Salt, **Barley Malt Extract, Molasses**, Cinnamon, **Honey**, Caramel Color, Natural Flavor, Bht Added To Preserve Freshness

 "Honey Bunches of Oats, Crunchy Honey Roasted"

Corn, Whole Grain Wheat, **Sugar,** Whole Grain Rolled Oats, Almonds, Rice, Canola Oil, **Corn Syrup**, Dried Bananas, Salt, **Barley Malt Extract, Molasses,** Cinnamon, **Honey**, Caramel Color, Natural Flavor, Bht Added To Preserve Freshness

AMENDED CLASS ACTION COMPLAINT

"Honey Bunches of Oats with real Strawberries"

Corn, Whole Grain Wheat, **Sugar**, Whole Grain Rolled Oats, **Brown Sugar**, Rice, Dried Strawberries, Canola Oil, Wheat Flour, Malted Barley Flour, **Corn Syrup,** Salt, Whey (From Milk), **Malted Corn And Barley Syrup**, **Honey**, Caramel Color, Natural Flavor, Annatto Extract (Color). Bht Added To Packaging Material To Preserve Product Freshness

"Honey Bunches of Oats, Pecan and Maple Brown Sugar"

Corn, Whole Grain Wheat, **Sugar**, Whole Grain Rolled Oats, Rice, Pecans, Canola Oil, Wheat Flour, Malted Barley Flour, **Corn Syrup**, Salt, **Molasses**, **Honey**, Caramel Color, **Barley Malt Extract**, Natural And Artificial Flavor

"Honey Bunches of Oats, Chocolate"

Corn, **Sugar,** Rice, Whole Grain Rolled Oats, **Brown Sugar,** Brown Rice Flour, Cocoa (Processed With Alkali), Canola Oil, **Corn Syrup,** Salt, Hydrogenated Vegetable Oil (Coconut And Palm Kernel Oils), **Honey**, Millet, Caramel Color, Natural And Artificial Flavor, Tocopherols (Added To Preserve Freshness), Annatto Extract (Color). Bht Added To Packaging Material To Preserve Product Freshness

"Honey Bunches of Oats with Cinnamon Bunches"

Corn, Whole Grain Wheat, **Sugar**, Whole Grain Rolled Oats, **Brown Sugar**, Rice, Canola Oil, Wheat Flour, Malted Barley Flour, **Corn Syrup**, Cinnamon, Salt, Whey (From Milk), **Malted Corn And Barley Syrup**, **Honey**, Natural And Artificial Flavor, Annatto Extract (Color). Bht Added To Packaging Material To Preserve Product Freshness

AMENDED CLASS ACTION COMPLAINT

"Honey Bunches of Oats Apple Caramel Crunch"

Corn, Whole Grain Wheat, **Sugar,** Whole Grain Rolled Oats, Rice, Dried Apples, Canola Oil, Wheat Flour, Malted Barley Flour, Cinnamon, **Corn Syrup**, Salt, **Molasses**, **Honey**, **Barley Malt Extract,** Natural Flavor. Bht Added To Preserve Freshness

"Honey Bunches of Oats with Apples & Cinnamon Bunches"

Corn, Whole Grain Wheat, **Sugar,** Whole Grain Rolled Oats, **Brown Sugar**, Rice, Dried Apples [Apples, Sodium Sulfite (Retains Color)], Canola Oil, Wheat Flour, Malted Barley Flour, Cinnamon, **Corn Syrup,** Salt, Whey (From Milk), **Honey**, **Malted Corn And Barley Syrup**, Apple Juice Concentrate, Natural Flavor, Annatto Extract (Color). Bht Added To Packaging Material To Preserve Product Freshness

"Honey Bunches of Oats with Vanilla Bunches"

Whole Grain Wheat, Rice, **Sugar,** Whole Grain Rolled Oats, **Brown Sugar**, Canola Oil, **Corn Syrup,** Wheat Flour, Corn Meal, Malted Barley Flour, Salt, Whey (From Milk), **Honey**, Ground Vanilla Beans, Natural Flavor. Bht Added To Packaging Material To Preserve Product Freshness

"Honey Bunches of Oats, Whole Grain Honey Crunch"

Whole Grain Wheat, Rice, **Sugar,** Whole Grain Rolled Oats, **Brown Sugar,** Canola Oil, **Corn Syrup**, Wheat Flour, Corn Meal, Malted Barley Flour, Salt, Whey (From Milk), **Honey**, Caramel Color, Natural And Artificial Flavor. Bht Added To Packaging Material To Preserve Product Freshness

"Honey Bunches of Oats, Whole Grain Almond Crunch"

Whole Grain Wheat, Rice, Whole Grain Rolled Oats, **Sugar, Brown Sugar,** Almonds, Canola Oil, **Corn Syrup**, Wheat Flour, Malted Barley Flour, Corn Meal, Salt, Whey (From Milk), **Honey**,

Caramel Color, Cinnamon, Natural And Artificial Flavor. Bht Added To Packaging Material To Preserve Product Freshness

28. Thus, in five of the twelve varieties of "Honey Bunches of Oats," honey is the fifth and least prominent sweetener; in four of the varieties, honey is the fourth and least prominent sweetener; and in three varieties honey is the fourth and second-least prominent sweetener.  In sum, the Products are sweetened primarily – indeed, almost exclusively – with refined added sugars.

29. Moreover, the August 2019  consumer survey indicated that 79.5% of respondents (or 333 consumers) believed, based on Post's packaging, that honey was one of the cereal's main three ingredients.  Unfortunately for consumers, this representation that honey is a significant or characterizing ingredient is false and deceptive, because each variety of "Honey Bunches of Oats" contains only a miniscule amount of honey,

30. A product branded "Honey Bunches of Oats" that pictorially conveys cereal being covered with honey and a bee in flight hardly means to a reasonable consumer that it is mostly sweetened with sugar and other refined substances or, moreover, that it contains only a miniscule amount of honey, but that is the reality.  The deception is compounded by the fact that there is no prominent language or other indication on the packaging that sugar and other refined substances are the primary sweeteners or, indeed, that they are present at all.[1]

31. The branding and packaging of "Honey Bunches of Oats" deceptively conveys that honey is the primary recognizable flavor or the characterizing flavor of the Products.  However, this is deceptive and misleading as the Products all contain flavoring ingredients in far greater quantities than honey, and many of these ingredients – such as molasses, brown sugar, nuts, and dried fruit – have flavor characteristics that are far more prominent than honey.  Indeed, even a cereal variety

---

[1] On the back of "Honey Bunches of Oats" cereal boxes is a paragraph with the heading "Tried and Tasty," under which is subsumed the phrase "a touch of honey."  The heading "Tried and Tasty" hardly notifies the reasonable consumer that information about ingredients may follow.  Regardless, however, this single obscure phrase in no way ameliorates the falsity and deceptiveness of the Products' overall branding and packaging.

that doubles-down on honey – "Honey Bunches of Oats, Crunchy Honey Roasted" – contains a number of flavoring ingredients that are each present in greater proportions than honey.

32.    The Food, Drug, and Cosmetic Act provides that a food is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1).

33.    The FDA recognizes that product names such as the one at issue here are misleading when they suggest one or more, but not all, of the key ingredients:

> The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling.

34.    21 C.F.R. § 101.18(b).

35. FDA regulations require that a food product's name disclose the percentage of honey when honey is a "characterizing ingredient:"

> The common or usual name of a food shall include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case.

21 C.F.R. § 102.5(b).

36.    Under 21 C.F.R. § 102.5(b). honey is a "characterizing ingredient" of "Honey Bunches of Oats" cereals because the proportion of honey in the Products has a material bearing on price and consumer acceptance of the Products for the reasons set forth above.

37.    Honey is also a "characterizing ingredient" of "Honey Bunches of Oats" cereals under   § 102.5(b) because the labeling of the Products creates an erroneous impression that honey is present in amounts greater than is actually the case.

38.    Under the same regulation, the names of the Products must disclose the percentage of sugar and other refined sweeteners since the proportions of these ingredients in the Products have a material bearing on price or customer acceptance.

39.     Defendant's branding and packaging of the Products are designed to – and do - deceive, mislead, and defraud consumers.

40.     Defendant's false, deceptive, and misleading branding and packaging of the Products has enabled Defendant to sell more "Honey Bunches of Oats" cereal than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

**D.  Facts pertaining to Peter Tucker**

41.     Mr. Tucker most recently purchased Honey Bunches of Oats on January 16, 2019 at a Safeway in Lafayette, California.  Plaintiff purchased and consumed Defendant's cereal because, based on Defendant's branding and packaging, he believed that the cereal was primarily if not exclusively sweetened with honey, a substance which Plaintiff believed was healthier than sugar. Mr. Tucker also believed that, based on the front of the packaging, honey was one of the top three ingredients in the Product.

42.     During the time when he was purchasing and consuming "Honey Bunches of Oats with Almonds," Plaintiff did not take steps to verify whether honey was, in fact, the primary sweetener or a significant sweetener of the product.  A reasonable consumer such as Plaintiff would not have considered it necessary to verify the clear message conveyed by Defendant's branding and packaging of the product.

43.     Plaintiff was economically harmed by Defendant's false, deceptive, and misleading branding and packaging conveying the message that its cereal was primarily or substantially sweetened with honey.  The value of the cereal that Plaintiff actually purchased and consumed was materially less than its value as misrepresented by Defendant.

44.     Mr. Tucker would consider purchasing the cereal again if the labeling were accurate.

**CLASS ACTION ALLEGATIONS**

45.     Plaintiffs bring this case as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3) on behalf of themselves and a proposed class (the "California Class") defined as follows:  All California persons who, on or after June 13, 2015, purchased the Products for personal, family, or household purposes.

46.     There are likely tens of thousands of class members in each class.  Each class is sufficiently numerous such that joinder is impracticable.

47.     There are issues of law and fact common to each class, which common issues predominate over any issues peculiar to individual class members.  The principal common issues are: whether the Products were sold to the public with the branding and packaging as alleged; whether Defendant's branding and packaging omitted material information concerning the percentages of honey and/or added sugars; whether Defendant's branding and packaging conveyed to the reasonable consumer that honey was the primary sweetener or a significant sweetener in the Products; whether Defendant's branding and packaging were formulated and carried out with the intent that others rely on same in connection with the sale of the Products; whether Defendant violated California law whether class members are entitled to damages and, if so, the proper measure of damages; and whether class members are entitled to injunctive relief and, if so, the proper nature and scope of such relief.

48.     Plaintiff's claims are typical of the claims of class members.   Plaintiff and all class members purchased cereals that, for all intents and purposes, were identically branded and packaged to mislead, deceive, and defraud consumers.  All claims are based on the same legal theories, and all arise from the same course of conduct.

49.     Plaintiff will fairly and adequately protect the interests of all class members.   Plaintiff is committed to a vigorous and successful prosecution of this action, are familiar with the legal and factual issues involved, and have retained counsel experienced in the litigation of consumer rights cases, including false advertising class actions.  Neither Plaintiff nor counsel have any interest or conflict that might cause them to not vigorously pursue this action.

50.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since: (a) the economic harm suffered by any individual class member is likely not substantial, and therefore, the expense and burden of individual litigation would be economically unfeasible; and (b) the prosecution of separate lawsuits by individual class members would entail the risk of inconsistent and conflicting adjudications that could establish conflicting

standards of conduct for Defendant; and (c) there will be no unusual or extraordinary management difficulties in administering this case as a class action.

51.     Defendant has acted on grounds generally applicable to the class with respect to the matters alleged herein, thereby making the relief sought appropriate with respect to the class as a whole.

**FIRST CAUSE OF ACTION**
**Violation of California's Consumers Legal Remedies Act,**
**CAL. CIV. CODE § 1750 *et seq.***
**On Behalf of the Class**

52.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

53.     Plaintiff brings this cause of action on behalf of the Class for violation of California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* (the "CLRA").

54.     This claim is for monetary relief and injunctive relief pursuant to California Civil Code section 1782.

55.     Under the CLRA, "consumer" means "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." CAL. CIV. CODE § 1761(d).

56.     Plaintiff and the Class members are "consumers" under the CLRA.

57.     Under the CLRA, "person" means "an individual, partnership, corporation, limited liability company, association, or other group, however organized." *Id.* § 1761(c).

58.     Defendant is a "person" under the CLRA.

59.     Under the CLRA, "transaction" means "an agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement." *Id.* § 1761(e).

60.     Defendant, on the one hand, and Plaintiff and the Class members, on the other hand, engaged in "transactions" under the CLRA because, among other reasons, Defendant agreed to sell, and pursuant to that agreement sold, the Products to Plaintiff and the Class members.

AMENDED CLASS ACTION COMPLAINT

61.     Defendant's actions, representations, omissions, and conduct have violated the CLRA because they extend to transactions that are intended to result, or that have resulted, in the sale of goods and services to consumers.

62.     Defendant's conduct violates the following specific sections of the CLRA:

(a)     Section 1770(a)(2), which prohibits representing that goods have a particular composition or contents that they do not have;

(b)     Section 1770(a)(5), which prohibits representing that goods have characteristics, uses, or benefits that they do not have;

(c)     Section 1770(a)(7), which prohibits representing that goods are of a particular standard, quality, or grade if they are of another;

(d)     Section 1770(a)(9), which prohibits advertising goods with intent not to sell them as advertised; and

(e)     Section 1770(a)(16), which prohibits representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

63.     As a result, in accordance with California Civil Code section 1780(a)(2), Plaintiff and the Class members have suffered irreparable harm and seek equitable relief in the form of an order:

-     Enjoining Defendant from continuing to engage in the deceptive practices described above;

-     Requiring Defendant to provide public notice of the true nature of the Product; and

-     Enjoining Defendant from such deceptive business practices in the future.

64.     Additionally, or alternatively, Defendant has violated the CLRA by making material omissions. At the time Plaintiff and the Class members purchased the Products, Defendant had a duty to disclose to Plaintiff and the Class members the material fact that the primary sweetener is not honey, but rather white sugar, brown sugar, and corn syrup, all of which – unlike honey - are refined sweeteners. . Defendant did not prominently and conspicuously disclose that fact.

65.     As a result, in accordance with California Civil Code section 1780(a)(2), Plaintiff and other class members have suffered irreparable harm and seek equitable relief in the form of an order:

- Enjoining Defendant from continuing to engage in the deceptive practices described above;

- Requiring Defendant to provide public notice of the true nature of the Product; and

- Enjoining Defendant from such deceptive business practices in the future.

66.     CLRA § 1782 NOTICE. On or about April 24, 2019, Mr. Tucker sent Defendant a notice and demand letter, notifying Defendant of its violations of the CLRA and demanding that within 30 days, Defendant remedy the unlawful, unfair, false, and/or deceptive practices complained of herein. Plaintiff advised Defendant that if it refused the demand, Plaintiff would seek monetary damages for himself and all others similarly situated, as well as injunctive relief, restitution, and any other relief the Court may deem just and proper. Defendant has failed to comply with the letter. Consequently, pursuant to California Civil Code section 1782, Plaintiff, on behalf of himself and all other members of the Class, seeks compensatory damages and restitution of any ill-gotten gains due to Defendant's acts and practices that violate the CLRA.

## SECOND CAUSE OF ACTION

### Violation of California's False Advertising Law,
### CAL. BUS. & PROF. CODE § 17500 *et seq.*
### On Behalf of the Class

67.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

68.     Plaintiff brings this cause of action on behalf of the Class for violation of California's False Advertising Law, CAL. BUS. & PROF. CODE § 17500 *et seq.* (the "FAL").

69.     The FAL prohibits "mak[ing] any false or misleading advertising claim."

70.     As alleged herein, Defendant, in its labeling of its Products, makes "false [and] misleading advertising claim[s]," as it deceives consumers as to the honey content and sugar content of the Products.

71.     In reliance on these false and misleading advertising claims, Plaintiff and the members of the Class purchased the Products.

72.     Defendant knew or should have known that its labeling and marketing of the Product was likely to deceive consumers.

73.     As a result, Plaintiff and the Class members seek injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

## THIRD CAUSE OF ACTION

**Violation of California's Unfair Competition Law,
CAL. BUS. & PROF. CODE § 17200 *et seq.*
Unlawful, Unfair, and Fraudulent Prongs
On Behalf of the Class**

74.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

75.     Plaintiff brings this cause of action on behalf of the Class for violation of the unlawful, unfair, and fraudulent prongs of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* (the "UCL").

76.     The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant, as alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including, at least, the following sections:

-    21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material";

-    21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

- 21 C.F.R. § 101.18(b), which prohibits true statements about ingredients that are misleading in light of the presence of other ingredients; and

- 21 C.F.R. § 102.5, which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein.

77.    Defendant's conduct is further "unlawful" because it violates the FAL and the CLRA, as discussed above.

78.    Defendant's conduct also violates the California Sherman Food, Drug, and Cosmetic Law, CAL. HEALTH & SAFETY CODE § 109875, *et seq.* ("Sherman Law"), including, at least, the following sections:

- Section 110100 (adopting all FDA regulations as state regulations);

- Section 110290 ("In determining whether the labeling or advertisement of a food … is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account. The extent that the labeling or advertising fails to reveal facts concerning the food … or consequences of customary use of the food … shall also be considered.");

- Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food…. An advertisement is false if it is false or misleading in any particular.");

- Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food … that is falsely advertised.");

- Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

- Section 110400 ("It is unlawful for any person to receive in commerce any food … that is falsely advertised or to deliver or proffer for delivery any such food…."); and

- Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

79. Each of the challenged statements made and actions taken by Defendant violates the FFDCA, the CLRA, the FAL, and the Sherman Law, and therefore violates the "unlawful" prong of the UCL.

80. Defendant leveraged its deception to induce Plaintiff and the members of the Class to purchase the Products, which were of lesser value and quality than advertised.

81. Defendant's deceptive advertising caused Plaintiff and the Class members to suffer injury in fact and to lose money or property, as it denied them the benefit of the bargain when they decided to purchase the Products over other products that are less expensive, and contain virtually the same (or immaterially different) amount of honey and/or less added sugar. Had Plaintiff and the members of the Class been aware of Defendant's false and misleading advertising tactics, they would not have purchased the Product at all, or would have paid less than what they did for it.

82. In accordance with California Business and Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

83. Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of Defendant's Products that were unjustly acquired through act of unlawful, unfair and/or fraudulent competition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class members, respectfully requests that the Court enter an Order:

A. certifying the proposed Class under section 1781 of the California Civil Code and section 382 of the California Code of Civil Procedure, as set forth above;

B. declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C. declaring that Defendant has committed the violations of law alleged herein;

1       D.      providing for any and all injunctive relief the Court deems appropriate;

2       E.      awarding Plaintiff and the Class members monetary relief in accordance with

3 applicable law;

4       F.      awarding Plaintiff his reasonable costs and expenses of suit, including attorneys'

5 fees;

6       G.      awarding pre- and post-judgment interest to the extent the law allows; and

7       H.      providing such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Date: September 11, 2019       Respectfully submitted,

**REESE LLP**

By: */s/ Michael R. Reese*
    Michael R. Reese (State Bar No. 206773)
    *mreese@reesellp.com*
    100 West 93rd Street, 16th Floor
    New York, New York  10025
    Telephone: (212) 643-0500
    Facsimile: (212) 253-4272

    George V. Granade (State Bar No. 316050)
    *ggranade@reesellp.com*
    8484 Wilshire Boulevard
    Los Angeles, California 90211
    Telephone: (212) 643-0500
    Facsimile: (212) 253-4272

    **QUAT LAW OFFICES**
    Kenneth D. Quat (*pro hac vice* to be filed)
    *ken@quatlaw.com*
    929 Worcester Road
    Framingham, Massachusetts  01701
    Telephone: (508) 872-1261

    *Counsel for Plaintiff Peter Tucker*
    *and the Proposed Class*

AMENDED CLASS ACTION COMPLAINT