**REESE LLP**
MICHAEL R. REESE (Bar No. 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone:   (212) 643-0500
Facsimile:    (212) 253-4272

**REESE LLP**
GEORGE V. GRANADE (Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone:   (212) 643-0500
Facsimile:    (212) 253-4272

**QUAT LAW OFFICES**
KENNETH D. QUAT (admitted *pro hac vice*)
*ken@quatlaw.com*
929 Worcester Road
Framingham Massachusetts 01701
Telephone: (508) 872-1261
Facsimile: (509) 861-0162

*Counsel for Plaintiff and the Proposed Class*
(additional counsel on following page)

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| PETER TUCKER, individually, and on behalf of a class of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>POST CONSUMER BRANDS, LLC,<br><br>Defendant. | Case No.: 4:19-cv-03993-YGR<br><br>Honorable Yvonne Gonzalez Rogers<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date:  Tuesday, December 17, 2019<br>Time:  2:00 p.m.<br>Location:  Courtroom 1, 4th Floor<br><br>Action Filed: July 11, 2019<br>Trial Date: None Set |

1

## **TABLE OF CONTENTS**

2    TABLE OF AUTHORITIES .................................................................................... i

3    STATEMENT OF THE ISSUES TO BE DECIDED .............................................1

4

5    BACKGROUND AND STATEMENT OF FACTS ...............................................1

6    STANDARD OF REVIEW ...................................................................................4

7   I.    DEFENDANT HAS NOT OVERCOME THE STRONG PRESUMPTION THAT PLAINTIFF'S STATE LAW CLAIMS ARE NOT PREEMPTED ...................................5

8       A.  There is a strong presumption against FDCA preemption of state law claims.............5

9       B.    Express preemption under the FDCA is extremely narrow ....................................6

10       C.    There is no preemption because the FDCA does not expressly regulate

11            sweetener labeling on the principal display panel of food products and Plaintiff's claims seek to enforce California statutory requirements that are

12            identical to those of the FDCA ...........................................................................6

13       D.    Even if the Product complies with FDA's flavor labeling regulation, this does not preempt Plaintiff's sweetener-based claims as a matter of law................8

14       E.    Any issues of fact preclude dismissal on preemption grounds .............................10

15

16   II.    IT CANNOT BE CONCLUDED AS A MATTER OF LAW ON A MOTION TO DISMISS THAT A REASONABLE CONSUMER COULD NOT BE MISLED

17        BY DEFENDANT'S CONDUCT .................................................................................11

18       A.  As a matter of law, it is not unreasonable for consumers to believe that honey is the predominate sweetener in "Honey Bunches of Oats" .....................11

19

20       B.  The fact that the Product actually contains some honey is irrelevant to the merits of Plaintiff's claims....................................................................................14

21       C.  Under the facts as alleged, a reasonable consumer is not expected to read

22          the fine-print ingredient list on the side of the packaging to discover the truth about Post's deceptive principal display panel, and imposing such a

23         requirement would contravene Ninth Circuit precedent .......................................16

24       D.  Plaintiff's allegation regarding the consumer survey are adequately pled ...........17

25       E.  The decision in *Lima* should not help Defendant here: the court erred in relying on

26         the FDA flavoring regulation; the court did not have the benefit of a consumer survey; and its treatment of the reasonable consumer standard is inconsistent with

27         Ninth Circuit law; moreover, the decision is on appeal……………………………..18

28

III.      PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF ................................. 20

IV.      PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND ANY ASPECT OF THE COMPLAINT THAT IS DEEMED DEFICIENT ..................................................... 21

V.       PLAINTIFF"S UCL AND FAL CLAIMS SHOULD NOT BE DISMISSED ................. 21

      CONCLUSION ................................................................................................................. 23

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

*Aberin v. Am. Honda Motor Co.*, 2018 WL 1473085 (N.D. Cal. Mar. 26, 2018) ........................ 22

3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 4

4

*Atik v. Welch Foods, Inc.,* 2016 WL 5678474 (E.D. N.Y. Sept. 30, 2016) ................................. 12

5

*Bailey v. Rite Aid Corporation,* 2019 WL 4260394 (N.D. Cal. Sept. 9, 2019) ....................... 6, 11

6

*Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005) ............................................................. 6

7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 5

8

*Branca v. Nordstrom, Inc.*, 2015 WL 10436858 (S.D. Cal. Oct. 9, 2015) ........................... 17, 18

9

*Chuang v. Dr. Pepper Snapple Grp., Inc.,*2017 WL 4286577 (C.D. Cal. Sept. 20, 2017).......... 14

10

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) ...................................... 17

11

*Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163 (2000)......................................... 21

12

*Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174 (S.D. Cal. 2015)........................................... 5

13

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018)............................................ 1, 20

14

*Davis v. Hain Celestial Grp., Inc.,* 297 F. Supp. 3d 327 (E.D.N.Y. 2018) ................................. 15

15

*Durnford v. MusclePharm Corp.,* 907 F. 3d 595 (9th Cir. 2018)............................................... 5

16

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003)...................................... 21

17

*Estakhrian v. Obenstine*, 233 F.Supp.3d 824 (C.D. Cal. 2017)............................................... 22

18

*Florida Lime & Avocado Growers v. Paul,* 373 U.S. 132 (1963) ............................................. 5

19

*Friedman v. AARP, Inc.*, 855 F.3d 1047 (9th Cir. 2017) ...................................................... 4

20

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
   8 F. Supp. 3d 467 (S.D. N.Y. 2014) ........................................................................ 7

21

*Hairston v. S. Beach Bev. Co., Inc.*, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ................... 16

22

*Hawkins v. The Kroger Company,* 906 F. 3d 763 (9th Cir. 2018)........................................ 5, 6, 9

23

*Henderson v. Gruma Corp.*, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ......................... 13, 14

24

*Holk v. Snapple Beverage Corp.*, 575 F.3d 329 (3d Cir. 2009).................................................... 5

25

*Holt v. Foodstate, Inc.*, 2015 WL 9592534 (S.D. Cal. Dec. 31, 2015)........................................ 7

26

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910
   (N.D. Ill. 2017)........................................................................................... 16, 17

27

28

*In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, 2014 WL 5311272
   (C.D. Cal. Sept. 4, 2014) ............................................................................ 15

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136 (9th Cir. 2019) ....... 4

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*, 2018 WL 1616053
   (C.D. Cal. Mar. 8, 2018) ............................................................................ 9

*Joseph v. J.M. Smucker Company,* 2019 WL 1219708 (C.D. Cal. Mar. 13, 2019) .................... 17

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ................................. 5

*Kosta v. Del Monte Corp.*, 2013 WL 2147413 (N.D. Cal. May 15, 2013) ............................. 5, 13

*Lanovaz v. Twminings N. Am., Inc.*, Fed. Appx. 590 (9th Cir. 2018) ................................. 20

*Lima v. Post Consumer Brands, LLC,* 2019 WL 3802885 (D. Mass. Aug. 13, 2019) .......... 18, 19

*Longman v. U.S.*, 86 F. 3d 1162 (9th Cir. 1996) ........................................................ 10

*Luong v. Subaru of Am., Inc.*, 2018 WL 2047646 (N.D. Cal. May 2, 2018) .......................... 1, 21

*Lusnak v. Bank of America, N.A.*, 883 F. 3d 1185 (9th Cir. 2018) ................................... 10

*Mantikas v. Kellogg Co.,* 910 F.3d 633 (2nd Cir. 2018) ............................................... 12, 16

*McKinnis v. Kellogg USA*, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ............................ 13

*Morris v. Atchity,* 2010 WL 4181452 (C.D. Cal. Oct. 15, 2010) ...................................... 10

*Plumley v. Com. of Mass.*, 155 U.S. 461 (1894) ........................................................ 5

*Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137 (C.D. Cal. 2010) ............................ 8, 10, 15, 19

*Red v. The Kroger Co.*, 2010 WL 4262037 (C.D. Cal. Sept. 2, 2010) ................................. 9

*Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015) ........................................... 6, 11

*Reynolds v. Wal-Mart Stores, Inc.*, 2015 WL 1879615 (N.D. Fla. April 23, 2015) .................... 8

*Robinson v. Unilever United States, Inc.*, 2019 WL 2067941 (C.D. Cal. Mar. 25, 2019) .......... 16

*Romero v. Flowers Bakeries, LLC*, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016) ...................... 15

*Safransky v. Fossil Grp., Inc.*, 2018 WL 1726620 (S.D. Cal. April 9, 2018) ........................ 21

*Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986 (S.D. Cal. 2015) ........................... 15

*Sandoval v. PharmaCare US, Inc.*, 730 Fed. Appx. 417 (9th Cir. 2018) ............................. 11

*Sensible Foods, LLC v. World Gourmet, Inc.,* 2012 WL 566304 (N.D. Cal. Feb. 21, 2012) ....... 14

*Shalikar v. Asahi Beer U.S.A., Inc.*, 2017 WL 9362139 (C.D. Cal. Oct. 16, 2017) .............. 17, 18

*Solak v. Hain Celestial Group, Inc.,* 2018 WL 1870474 (N.D. N.Y. Apr. 17, 2018) .................. 14

*Syed v. M-I, LLC,* 853 F.3d 492 (9th Cir. 2017) ........................................................................ 4

*United States v. An Article of Food Labeled Nuclomin,* 482 F. 2d 581 (8th Cir. 1973) ................ 8

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) .......................................... 11, 16, 17

*Wilson v. Frito-Lay N. Am., Inc.,* 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013) ............................ 7

*Workman v. Plum Inc.,* 141 F. Supp. 3d 1032 (N.D. Cal. 2015) .......................................... 15, 16

*Wyeth v. Levine*, 555 U.S. 555 (2009) ........................................................................................ 5

*Zupnik v. Tropicana Products, Inc.*, 2010 WL 6090604 (C.D. Cal. Feb. 1, 2010) ...................... 7

**Other Citations**

21 U.S.C. § 101.1 .................................................................................................................. 2, 6

21 U.S.C. § 101.4 .................................................................................................................... 3

21 U.S.C. § 101.18 ................................................................................................................. 10

21 U.S.C. § 101.22 .............................................................................................................. 8, 10

21 U.S.C. § 331 .................................................................................................................... 6, 7

21 U.S.C. § 343 ....................................................................................................................... 7

38 Fed. Reg. 20,718 ................................................................................................................ 8

Food and Drug Administration, *Proper Labeling of Honey and Honey Products: Guidance for Industry* (February 2018) ......................................................................................................... 3

**OPPOSITION TO MOTION DISMISS**
**Case No.: 4:19-cv-03993-YGR**

Plaintiff Peter Tucker ("Plaintiff") hereby opposes the motion of defendant Post Consumer Brands, LLC ("Post" or "Defendant") to dismiss the Amended Complaint ("MTD" or "Motion").

## STATEMENT OF ISSUES TO BE DECIDED

1.     Has Defendant overcome the strong presumption that the Food, Drug, and Cosmetic Act ("FDCA") does not preempt Plaintiff's state law claims?

2.     Should the Court contravene governing 9th Circuit authority and reject - as a matter of law - Plaintiff's claims, as supported by a survey of more than 400 persons, that a reasonable consumer is likely to be misled by Post's packaging and labeling to believe that honey is the predominant sweetener in "Honey Bunches of Oats" cereal, relative to sugar and other refined sweeteners?

3.     Should Defendant's argument that Plaintiff lacks standing to pursue injunctive relief be rejected given the contrary holding in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018)?

4.     If any part of the Amended Complaint is deemed deficient, should leave to amend be granted as required by Federal Rule of Civil Procedure 15(a)(2)?

5.     Should Plaintiff's claims for equitable relief under California's Unfair Competition Law and False Advertising Law be dismissed as duplicative of his Consumer Legal Remedies Act claim even though this Court previously rejected such a  result  in *Luong v. Subaru of Am., Inc.*, 2018 WL 2047646 (N.D. Cal. May 2, 2018)?

## BACKGROUND AND STATEMENT OF FACTS

Defendant manufactures and markets a line of breakfast cereals under the name "Honey Bunches of Oats" (sometimes referred to herein as "the Product").  The cereals are sold in rectangular boxes containing 13 ounces or more of cereal and in single-serving "to go" cups containing 2.25 ounces of cereal.  Amended Complaint ("Amd. Comp." or "Complaint"), ¶¶ 19, 20.

Post's labeling and packaging of the Product scream "HONEY."  The word "honey" is the first descriptor in the product name, and that name is emblazoned in large, bold letters in circular format that occupies much of each package front (in regulatory parlance, the "principal display

panel"[1]).  The product name is further highlighted by being silhouetted against a bright yellow/orange background simulating the sun.  In the middle of the "sun" is a large wooden honey dipper covered with and dripping honey. Together, the name "Honey Bunches of Oats" and the honey dipper dominate the package. In addition, toward the bottom of the package is a honeybee trailing a broken line indicating a flight path passing over or through a spoonful of cereal. The front of a typical Honey Bunches of Oats box and "to go" cup are shown here:

 

Amd. Comp. ¶¶ 22, 23.

It is incontrovertible that honey is a sweetener and is commonly perceived as such, as confirmed by authorities ranging from Merriam-Webster ("a sweet viscid material . . . the quality or state of being sweet" (www.merriam-webster.com/dictionary/honey) to Lexico ("[a]ny sweet substance similar to bees' honey") (www.lexico.com/en/definition/honey) to the Cambridge Dictionary ("A sweet, stick yellow substance made by bees and used as food") (www.dictionary.cambridge.org/us/dictionary/english/honey).   As   the   Food   and   Drug

---

[1] The "principal display panel" is "the part of a label that is most likely to be displayed presented, shown, or examined under customary conditions of display for retail sale." 21 C.F.R. § 101.1. Thus, for Honey Bunches of Oats, it is the front of the cereal box and the front of the "to go" cup.

**OPPOSITION TO MOTION DISMISS**
**Case No.: 4:19-cv-03993-YGR**

Administration ("FDA") recognizes: "Reference materials in the public domain define honey as 'a thick, sweet, syrupy substance that bees make as food from the nectar of plans or secretions of living parts of plants and store in honeycombs.'"   FDA, *Proper Labeling of Honey and Honey Products: Guidance for Industry* (February 2018)(www.fda.gov/files/food/published/PDF---Guidance-for-Industry--Proper-Labeling-of-Honey-and-Honey-Products.pdf).

It is also beyond question that honey, a natural substance, is perceived by consumers as healthier than sugar and other refined sweeteners, as shown by the representative sampling of industry and general news publications described in the Amended Complaint.  Amd. Comp., ¶¶ 9–14.  Consumer perception is sound, as the Complaint alleges:

> Honey is a naturally occurring substance and, unlike sugar, has amounts of nutrients such as vitamins, minerals, enzymes, and antioxidants.  In addition, honey has a lower glycemic index than sugar, meaning that it causes slower fluctuations in blood glucose levels (often referred to as "blood sugar") and therefore in insulin levels as well.  Rapid spikes of blood glucose levels lead to quick spurts of energy followed by sharp declines in energy characterized by tiredness, headaches, and difficulties in concentrating ("low blood sugar").

Amd. Comp. ¶ 16.  These publications, and many others, also document that consumers are willing to - and do - pay higher prices for products believed to be sweetened with honey as opposed to sugar. Amd. Comp. ¶¶ 15–18.

Plaintiff purchased Honey Bunches of Oats cereal because he reasonably believed it was sweetened primarily or significantly with honey and was therefore healthier.  Amd. Comp. ¶ 41. Because Plaintiff viewed the cereal as healthier, he was willing to – and did - pay a premium price for it.  Amd. Comp. ¶ 43.  Unfortunately, and to his surprise and consternation, Plaintiff eventually discovered that he had been deceived by Post because, in truth, honey is a token "throw-in" sweetener in the Product, present in such small amounts that by volume it is the last or second-to-last of four or five sweeteners.[2]  All of the other, more prevalent sweeteners are processed substances - primarily regular white sugar, brown sugar, and corn syrup.  Indeed, honey is such a minor

---

[2] Per FDA regulations, ingredients must be listed in the nutrition panel in descending order of predominance by volume. 21 C.F.R. § 101.4(a)(1).

ingredient in the Product that in most varieties it is the last or second-to-last food ingredient by volume, exceeding only additives such as artificial colors and preservatives. Amd. Comp. ¶¶ 26 – 28.[3]

Plaintiff and numerous other California consumers have been harmed by paying a premium for a cereal represented by Defendant as having honey be the primary sweetener.  In fact, however, the reality is the opposite.  Indeed, Honey Bunches of Oats is little different from the multitude of other sugar-laden cereals found in the marketplace.  Defendant has profited from the Product's fraudulent price premium at the expense of consumers.

Plaintiff's claims are meritorious and deserve to be adjudicated. None of Plaintiff's claims are subject to dismissal on any of the technical legal grounds raised by Defendant.

## STANDARD OF REVIEW

A complaint is not subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6) so long as "it contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility standard "is not akin to a 'probability requirement'" *Id.*    In resolving a Rule 12(b)(6) motion, the Court must "take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1149 (9th Cir. 2019)*; accord, Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017) (reversing dismissal of UCL claim).  In addition, courts "presume that general allegations embrace those specific facts that are necessary to support a claim."  *Syed v. M-I, LLC*, 853 F.3d 492, 499 n.4 (9th Cir. 2017). Moreover, the court "draw[s] all reasonable inferences in favor of the plaintiff."  *Khoja v. Orexigen*

---

[3] For example, the ingredients in "Honey Bunches of Oats with Crispy Almonds," the variety depicted above, are listed in the following order:

> Corn, Whole Grain Wheat, **Sugar,** Whole Grain Rolled Oats, **Brown Sugar,** Almonds, Rice, Canola Oil, Wheat Flour, Malted Barley Flour, **Corn Syrup,** Salt, Whey (From Milk), **Malted Corn And Barley Syrup,** **Wildflower Honey,** Caramel Color, Cinnamon, Natural And Artificial Flavor, Annatto Extract (Color), Bht Added To Packaging Material To Preserve Product Freshness.

(emphases added).

*Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).   Finally, as the Supreme Court has admonished, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## I. DEFENDANT HAS NOT OVERCOME THE STRONG PRESUMPTION THAT PLAINTIFF'S STATE LAW CLAIMS ARE NOT PREEMPTED.

### A. There is a strong presumption against FDCA preemption of state law claims.

It is well understood that "[l]aws regulating the proper marketing of food, including the prevention of deceptive sales practices, are [] within states' historic police powers." *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1187 (S.D. Cal. 2015)*; see Plumley v. Com. of Mass.*, 155 U.S. 461, 472 (1894) ("If there be any subject over which it would seem the states ought to have plenary control . . . it is the protection of the people against fraud and deception in the sale of food products."); *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) ("[h]ealth and safety issues have traditionally fallen within the province of state regulation," including "the regulation of food and beverage labeling and branding").   Thus, state food labeling requirements "are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Hawkins v. Kroger Company,* 906 F. 3d 763, 769 (9th Cir. 2018), quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).   Accordingly, as this Court has emphasized, "[t]here is a strong presumption against federal preemption in the area of proper marketing and regulation of food, a realm traditionally in the power of the States."   *Kosta v. Del Monte Corp.,* 2013 WL 2147413 at *6 (N.D. Cal. May 15, 2013) (Gonzalez Rogers, J.), citing *Florida Lime & Avocado Growers v. Paul,* 373 U.S. 132, 144 (1963); s*ee also Durnford v. MusclePharm Corp.,* 907 F. 3d 595, 601 (9th Cir. 2018) ("a presumption against preemption applies to the extent the FDCA is used to displace state law in an area of traditional state police power. . . [c]onsumer protection falls well within that category").

**B.  Express preemption under the FDCA is extremely narrow.**

Post contends that Plaintiff's claims are all preempted by the FDCA, which prohibits the misbranding of food in interstate commerce. 21 U.S.C. § 331.  In 1990, the FDCA was amended by the Nutrition Labeling and Education Act (the "NLEA") to provide that it "shall not be construed to preempt any provision of State law, unless such provision is *expressly* preempted." NLEA § 6(c) (statutory note to § 343-1) (emphasis supplied).  Thus, there is no "conflict" or "field" preemption under the FDCA, only "express preemption."  *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015).  Moreover, there is no express preemption of state law claims "that are identical to the federal labeling requirements'" *Hawkins,* 906 F. 3d at 769, quoting *Reid,* 780 F. 3d at 959.  This means that "a state-law labeling requirement is not pre-empted . . . if it is equivalent to, and fully consistent with [federal] misbranding provisions." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 447 (2005); s*ee Kosta,* 2013 WL 2147413 at *7 ("the many district courts addressing this issue have found that state law claims are not preempted where the food labeling requirements under state law are identical to their federal FDCA and NLEA counterparts"). Furthermore, if there is any ambiguity as to whether preemption applies, courts "have a duty to accept the reading . . . that disfavors pre-emption." *Bates,* 544 U.S. at 449.

**C.  There is no preemption because the FDCA does not expressly regulate sweetener labeling on the principal display panel of food products and Plaintiff's claims seek to enforce California statutory requirements that are identical to those of the FDCA.**

Sections 343(b) – (y) of the FDCA set forth a number of specific food labeling requirements, any violation of which constitutes "misbranding."  Additional labeling requirements as promulgated by the FDA are set forth in 21 C.F.R. § 101.1 *et seq.*  None of the statutory provision nor regulations address sweetener labeling on the principal display panel of food products, a fact not contested by Post.  Consequently, no preemption arises here.  *See,* e.g., *Bailey v. Rite Aid Corporation,* 2019 WL 4260394 at *5 (N.D. Cal. Sept. 9, 2019) (manufacturer failed to meet burden of establishing preemption because, in part, FDA publications "were silent as to dissolution standards for rapid release acetaminophen").

In addition, there is no preemption because Plaintiff's claims parallel the FDCA's expansive catch-all provision that deems a food misbranded "[if] its labeling is false or misleading in any particular." 21 U.S.C. § 343(a).[4]   *See Holt v. Foodstate, Inc.*, 2015 WL 9592534 at *4 (S.D. Cal. Dec. 31, 2015) ("[The] state law claims brought by Plaintiffs, which are predicated on the basis that Defendant's products' labels are either false or misleading, are not expressly preempted by the FDCA"); *Zupnik v. Tropicana Products, Inc*., 2010 WL 6090604 at *2 (C.D. Cal. Feb. 1, 2010) ("[a] party equipped with a private right of action under state law is able to sue to enforce a state statute identical to § 343(a), just as the FDA would be able to sue to enforce § 343(a) itself"); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 474 (S.D. N.Y. 2014) (claims based on state laws that "declare[] unlawful deceptive acts or practices in the conduct of any business, trade or commerce," that "prohibit[] usage of false or misleading express warranties that cause loss," and "proscribe[] inequitable benefit at another's expense" not preempted by FDCA).  Indeed, there can be no preemption because California has incorporated the FDCA and its regulations into its own statutory scheme, and Plaintiff's claims do not seek to impose any additional requirements.  *See Wilson v. Frito-Lay N. Am., Inc.,* 2013 WL 1320468 at *9 (N.D. Cal. Apr. 1, 2013) (false labeling claims not preempted where based on California statutes that incorporate federal law and regulations as written); *Kosta,* 2013 WL 2147413 at * 8 (same).

---

[4] For example, among the CLRA provisions allegedly violated are section 1770(a)(2), which prohibits false representations that goods have a particular composition or contents; section 1770(a)(5), which prohibits false representations that goods have certain characteristics, uses, or benefits; and section 1770(a)(7), which prohibits false representations that goods are of a particular standard, quality, or grade. Amd. Comp. ¶ 62.  Similarly, Plaintiff's claim under the FAL is that Post's labeling constitutes unlawful advertising by misleading consumers as to the honey and sugar content of the Product.  Amd. Comp. ¶¶ 69 – 70.  And, Plaintiff asserts violations of the UCL based on violations of FDCA provisions, the FAL, and the Sherman Law (which adopts all FDA regulations as state regulations).  Amd. Comp, ¶¶ 76 – 79.

7

**D.  Even if the Product complies with the FDA's flavor labeling regulation, this does not preempt Plaintiffs' sweetener-based claims as a matter of law.**

Post argues that the Product complies with the FDA's flavor labeling regulation, 21 C.F.R. § 101.22(i), because honey is its "primary recognizable flavor."  However, the FDA has long recognized that under the FDCA regulatory scheme "[s]weeteners are not spices or flavors."  Food Labeling; Spices, Flavorings, Colorings and Chemical Preservatives, 38 Fed. Reg. 20,718, 20,720 (Aug. 2, 1973).  This should end the matter: without more - such as an indication on the product label that honey is present as a flavor, e.g., "honey-flavored" - § 101.22(i) is inapplicable.

However, even assuming *arguendo* that honey could be a flavor under the FDCA and is in fact the Product's "primary recognizable flavor" (a dubious proposition that Plaintiff disputes at Amd. Comp. ¶31), the regulation still does not preempt Plaintiff's claims that the labeling is misleading as to ***sweeteners***.   As has often been recognized, "if some aspects of a label are required or permitted, the rest of the label must still comply with § 343(a)(1) and not be 'false or misleading in any particular.'" *Reynolds v. Wal-Mart Stores, Inc.*, 2015 WL 1879615 at *3 (N.D. Fla. April 23, 2015), citing *United States v. An Article of Food Labeled Nuclomin,* 482 F. 2d 581, 583 (8th Cir. 1973).  Simply stated, Post is not protected from a claim of deceptive sweetener labeling simply by having complied (arguably) with a flavor labeling regulation.

*Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137 (C.D. Cal. 2010)  is directly on point.  There, consumers alleged that the labeling of "Honey Maid Graham Crackers" caused them to believe the product was sweetened primarily with honey when in fact its predominant sweeteners were sugar and high fructose corn syrup.  *Red,* 754 F. Supp. 2d at 1139, 1143.  Defendants moved to dismiss on the same ground advanced by Post - that "the challenged words and images concerning . . . honey . . . [were] preempted because they [complied] with the FDA's 'characterizing flavor' regulations at 21 C.F.R. § 101.22(i)."  Denying the motion, the court explained:

> Plaintiffs allege that Honey Maid's product name, the prominent second use of the word "Honey" directly below it, and the prominent image of flowing honey are intended to convey the message that Honey Maid Graham Crackers are primarily sweetened with honey and not that they are "honey flavored." ***The Court would decline to construe these usages as mere representations of "characterizing flavor."***

8

*Id.* at 1142–43 (emphases supplied).  The sound reasoning of *Red v. Kraft Foods* should be followed here: there is nothing in the FDCA itself or in FDA regulations that permits Post to evade responsibility for misrepresenting honey as a predominant sweetener simply by proffering an after-the-fact rationalization for purposes of litigation that honey is present in the Product only as a flavoring agent.  And while 21 C.F.R. § 101.22(i) does not require Post to state on the package front that the Product is "honey-flavored" (if it truly is, of course), the regulation certainly does not preclude use of such qualifying language where necessary to avoid deceiving consumers.

Post attempts to avoid this result by invoking *In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*, 2018 WL 1616053 (C.D. Cal. Mar. 8, 2018), but does not succeed.  The gravamen in *Quaker Oats* was that the product name was deceptive as to flavoring because no maple syrup was in the cereal.  Preemption was found because a specific FDCA provision governs the labeling of products purporting to contain maple syrup and "maple . . . appears on the FDA's list of 'flavoring substances.'"  *Id.,* at 3.   In stark contrast, the issue here is not flavor labeling and honey is not considered a flavor by the FDA.[5]

Post also cites *Red v. The Kroger Co.*, 2010 WL 4262037 (C.D. Cal. Sept. 2, 2010), but that decision is directly contradicted by *Hawkins v. The Kroger Co.,* 906 F.3d 763, 769 (9th Cir. 2018).  Moreover, *Red's* facts were far different from those of the present case.  There, plaintiffs alleged that the phrases "a Cholesterol Free Food" and "0g Trans Fat per serving" were literally false, and the claims were deemed preempted because federal law specified the circumstances under which such phrases could be used.  *Id.* at **4, 6.  Here, by contrast, there is no federal guidance as to how the term "honey" as a sweetener can be used in a product label, a fact not contested by Defendant.[6]

---

[5] It is also noteworthy that in the  prior decision dismissing the original *Quaker* complaint (but granting leave to amend), it noted the absence of allegations "that any Plaintiff purchased the Products because of the promise of maple ***sweetener*** as opposed to maple ***flavoring***."  *In re Quaker Oats,* 2017 WL 4676585 at *5. The more recent ruling did not revisit or disturb this finding.

[6] For the same reasons, the additional case cited by Defendant  (MTD at 7-8) are inapposite.  In each case the claim was deemed preempted because an FDA flavor labeling provision expressly permitted the use of fruit names and fruit images to indicate flavor even though no actual fruit was present in the product. There is no similarity whatsoever to the sweetener labeling issue raised here.

**OPPOSITION TO MOTION DISMISS**
**Case No.: 4:19-cv-03993-YGR**

Nor can there be preemption of Plaintiff's claim that the product name is itself misleading. In addition to Plaintiff's core allegation that Post's labeling and packaging of the Product is unlawful, Plaintiff asserts that the name "Honey Bunches of Oats" violates California law by referencing "honey" while failing to mention any of the more predominant sweeteners. Amd. Comp. ¶¶ 32 – 34. An FDA regulation provides that this kind of "selective naming" can be misleading and thereby violate the Act:

> The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all  such ingredients are stated elsewhere in the labeling.

21 C.F.R. § 101.18(b).  Thus, the holdings of *Red v. Kraft Foods* applies here as well: even if *arguendo* "Honey Bunches of Oats" is FDA-compliant with respect to flavor labeling, this would not bar claims that its labeling is unlawful for other reasons.  *Red,* 754 F. Supp. 2d at 1142 – 1143.

Accordingly, Plaintiffs' claims are not preempted by 21 C.F.R. § 101.22(i).

### E.  Any issues of fact preclude dismissal on preemption grounds.

It is axiomatic that where a preemption defense implicates any unresolved question of fact, dismissal is inappropriate.  *See Lusnak v. Bank of America, N.A.,* 883 F. 3d 1185, 1194 n. 6 (9th Cir. 2018) (preemption not warranted "except when [it] raises no disputed issues of fact"); *Longman v. U.S.,* 86 F. 3d 1162 (9th Cir. 1996) (reversing preemption ruling due to "insufficient undisputed facts"); *Morris v. Atchity,* 2010 WL 4181452 at *4 (C.D. Cal. Oct. 15, 2010) (preemption defense rejected due to "triable issue of fact").  Thus, for example, should the Court believe that 21 C.F.R. § 101.22(i) is somehow relevant to preemption, then Post's position that honey is the Product's "primary recognizable flavor" – which Plaintiff disputes - must be explored through discovery and, if necessary, tested at trial.

**II.    IT CANNOT BE CONCLUDED AS A MATTER OF LAW ON A MOTION TO DISMISS, THAT A REASONABLE  CONSUMER COULD NOT BE MISLED BY DEFENDANT'S CONDUCT**

It is axiomatic that courts apply the "reasonable consumer" standard in determining whether a manufacturer's representations regarding a product are misleading or deceptive in violation of the UCL, FAL, and CLRA. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  Under this standard, a cognizable claim exists "if a reasonable consumer could find [a] statement would be 'either actually misleading' or having the 'capacity, likelihood, or tendency to deceive or confuse the public.'" *Bailey,* 2019  WL 4260394 at *6. It is  equally  well-settled  that  in  evaluating deceptiveness, "context is crucial."  *Sandoval v. PharmaCare US, Inc.,* 730 Fed. Appx. 417, 419 (9th Cir. 2018) ("when read in context, the label's statements could convey to a reasonable consumer that IntenseX will increase the consumer's endurance and stamina"); *see also Williams,* 552 F. 3d at 939 n. 3 ("Given the context of this statement, we decline to give Gerber the benefit of the doubt by dismissing the statement as puffery.").

Furthermore, as the Ninth Circuit has emphasized, application of the reasonable consumer standard "raises questions of fact that are appropriate for resolution on a motion to dismiss *only in 'rare situation[s].*"  *Reid*, 780 F.3d at 958  (emphasis supplied); *Williams*, 552 F.3d at 938–39 ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer.").  In sum, dismissal is only appropriate if "the advertisement itself [makes] it *impossible* for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Id.* at 939 (emphasis supplied).

**A.  As a matter of law, it is not unreasonable for consumers to believe that honey is the predominant sweetener in  "Honey Bunches of Oats."**

The labeling of "Honey Bunches of Oats" highlights the presence of honey in the Product. The word "honey" is the first descriptor in the Product name, and that name is emblazoned in large, bold letters in circular format silhouetted against a bright yellow/orange sun, occupying most of the center portion of each package front.  In the middle of the circular product name is a large wooden

honey dipper covered with and dripping honey. Together, the name "Honey Bunches of Oats" and the dripping honey dipper dominate the principal display panel, literally putting honey "front and center" with respect to the Product's ingredients. Moreover, toward the bottom of the package is the outline of a honeybee trailing a broken line indicating a flight path passing through or over the cereal.   Amd. Comp. ¶¶ 21–24.   In its motion Post has not taken issue with these facts or with Plaintiff's characterization of its labeling.

It is equally apparent, as discussed above, that honey is a food sweetener and is recognized as such by the scientific community and the general public.  Also as noted, the FDA has long treated honey as a sweetener. *See* p.3, *supra.*   Thus, it cannot be considered unreasonable as a matter of law that Plaintiff viewed Defendant's "honey" terminology and imagery as indicating how the Product is sweetened – namely, that honey is the predominant sweetener relative to sugar and other refined substances and, therefore, the Product is healthier than sugar-based cereals.

Mirroring Plaintiff's experience is an August, 2019 survey of over 400 consumers which found that, based on the Product's principal display panel, 68% of respondents believed honey to be the Product's primary sweetener and 79.5% of respondents believed honey to be one of the Product's main three ingredients.  Amd. Comp. ¶ 29.  These facts are more than sufficient to show that a significant portion of the public would likely be misled by Defendant's labeling of Honey Bunches of Oats.  For this fundamental reason, Defendant's position must be rejected as without merit.

That Plaintiff's allegations meet the reasonable consumer test is supported by well-reasoned case law.  In both the Ninth Circuit case of *Williams v. Gerber* and the district court case of *Atik v. Welch Foods, Inc.,* 2016 WL 5678474 (E.D. N.Y. Sept. 30, 2016), plaintiffs asserted that products with fruit images on the packages misled them as to the products' healthfulness given that the two most prominent ingredients were corn syrup and sugar.  The allegations were held sufficient to state claims under California law.  *Williams,* 552 F. 3d at 939; *Atik,* 2016 WL 5678474 at *10.  Plaintiff's claims here are directly analogous.  Similarly, in *Mantikas v. Kellogg Co.,* 910 F.3d 633 (2nd Cir. 2018)*,* the Second Circuit found that "large, bold-faced claims of 'Whole Grain'" on boxes of crackers created "reasonable expectations" that the food was predominantly whole grain.  The same

can be said here: Defendant's highlighting of honey on packages of Honey Bunches of Oats creates the "reasonable expectation" that the cereal is sweetened primarily with honey.  The Second Circuit in *Mantikas* held that since plaintiffs alleged the crackers were not, in fact, predominantly made with whole grain, their deception claims under California and New York law could proceed. *Mantikas*, 910 F. 3d at 637.

Likewise, in *Henderson v. Gruma Corp.*, 2011 WL 1362188 at *12 (C.D. Cal. Apr. 11, 2011), defendant's packaging displayed the name "GUACAMOLE" in large capital letters with large pictures of avocados. Plaintiff alleged this was deceptive because the product contained less than 2% avocado powder.  Like Post's strategy here, the manufacturer sought dismissal on the ground that the product was "guacamole flavored."  Despite the fact that the phrase "flavored dip" actually appeared on the front labeling (albeit in small print), the court ruled that the large print and graphics could mislead a reasonable consumer into thinking the product was actually guacamole.

Finally, in *Kosta*, this Court reviewed a number of product labeling claims and found they all met the reasonable consumer test for deception.  In particular, the Court found it plausible "that a reasonable consumer, finding a plastic container of fruit in the refrigerated produce section labeled "must be refrigerated' and identifying no ingredients on the label as chemical preservatives would believe that the product is fresh cut fruit and would be influenced by that appearance to purchase it." *Kosta,* 2013 WL 2147413 at * 12.   Clearly, therefore, here it cannot be said as a matter of law that Defendant's highlighting of honey – coupled with the lack of any 'front of the package" disclosure of other sweeteners – could not mislead a reasonable consumer.

Defendant tries to overcome this solid precedent by positing that the name "Honey Bunches of Oats" is "fanciful," meaning that it should not be viewed by consumers as having any basis in reality.  MTD at 14-15.  Clearly, Post is grasping at straws, as the gulf between the name "Honey Bunches of Oats" and true fanciful names such as "Froot Loops," "Berry Berry Kix," and "Fruity Cheerios" is wide.   Moreover, in all the cases involving true "fancifully-named" products, consumers alleged deception as to what was actually in the products (namely, actual fruit), not the

proportion of a particular ingredient that was actually in the product – as is the case here.[7] Accordingly, given Post's emphasis on an ingredient actually contained in the Product, it is hardly unreasonable for consumers to conclude that honey is its predominant sweetener and one of its main ingredients, particularly when viewed in the context of the health halo surrounding honey.  Amd. Comp. ¶¶ 13–14, 16–18.  Unfortunately for consumers, neither is true.

### B.  The fact that the Product actually contains some honey is irrelevant to the merits of Plaintiff's claims.

Post says that its labeling cannot deceive a reasonable consumer because it does not warrant a specific amount of honey and Plaintiff does not allege a specific amount of honey that a reasonable consumer would expect to find in the Product.  MTD at 15.  This position, which is clearly without merit, is advanced simply to obfuscate the real issue – namely, whether Post's labeling is deceptive as to the *relative amount* of honey in the Product vis-à-vis refined sweeteners - not whether honey is present at all (or in a particular amount).

Not surprisingly, the cases which Post cites are patently inapposite.  In both *Henderson* and *Solak v. Hain Celestial Group, Inc.,* 2018 WL 1870474 (N.D. N.Y. Apr. 17, 2018), the courts concluded that labels describing the food as "vegetable" in nature or as "containing vegetables" were not deceptive given that vegetables were in fact present, albeit in powdered or flour form.  Here, by contrast, a consumer survey evidences that consumers would expect honey to be the primary sweetener, as well as one of the top three ingredients.  In *Chuang v. Dr. Pepper Snapple Grp., Inc.,* 2017 WL 4286577 (C.D. Cal. Sept. 20, 2017), *Sensible Foods, LLC v. World Gourmet, Inc.,* 2012 WL 566304 (N.D. Cal. Feb. 21, 2012), and *Red v. Kraft Foods, Inc.,* 2012 WL 5501044 (C.D. Cal. Oct. 25, 2012),  the issue was whether the phrases "made with real fruit" and "made with real vegetables" conveyed to reasonable consumers that significant amounts of these ingredients were present.  These cases turned on the fact that the qualifier "made with" arguably put reasonable consumers on notice that a product may not contain a significant amount of an ingredient; here, by

---

[7] For example, "Froot Loops" were "brightly colored rings of cereal" that "in no way resemble[d] any currently known fruit" and thus, contrary to the plaintiffs' allegations, the cereal plainly did not contain actual fruit. *McKinnis v. Kellogg USA*, 2007 WL 4766060, at *1, *4 (C.D. Cal. Sept. 19, 2007).

contrast, no such qualifying language appears on Post's principal display panel, and Plaintiff is not complaining that Honey Bunches of Oats lacks a significant amount of honey, rather, that the *proportion* of honey vis-à-vis refined sweeteners is deceptively small.  And again, the consumer survey here evidences that Defendant's packaging of the Products to believe that honey is a top ingredient and the primary sweetener.  Similarly, in *Romero v. Flowers Bakeries, LLC*, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016), plaintiff complained that bread did not contain a significant amount of whole wheat, but it was not marketed as a "whole wheat" product and the packaging prominently disclosed that it contained "a blend" of grains.  The case is also distinguishable because, as noted, Plaintiff is not complaining about the amount of honey *per se* (negligible though it may be), but rather about the relative amount of honey compared to processed sugars.  Finally, in *Workman v. Plum Inc.,* 141 F. Supp. 3d 1032 (N.D. Cal. 2015) and *Davis v. Hain Celestial Grp., Inc.,* 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018), plaintiffs complained that pictures and names of ingredients on the package conveyed that the products were largely made with those ingredients.  However, unlike here, the ingredients were not part of the product name and the claims had nothing to do with the relative amounts of certain ingredients or alleged deception with regard to the presence of unhealthy ingredients.

Defendant also says that because Plaintiff does not specify the amount of honey he expected in the Product, the Amended Complaint does not satisfy Fed. R. Civ. P. 9(b).  MTD at 17.  Once again, Defendant mischaracterizes Plaintiff's claims, which assert that the labeling is deceptive as to *relative amounts* of sweeteners.  Plaintiff's allegations to this effect – which appear multiple times throughout the Complaint - adequately inform Defendant of the challenged misconduct.  *Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 997 (S.D. Cal. 2015) ("Rule 9(b) is satisfied if the allegations of fraud are 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'"); *In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, 2014 WL 5311272, at *17 (C.D. Cal. Sept. 4, 2014) ("[m]any courts in California have applied a relatively straightforward test for the application of Rule 9(b) to label-based fraud claims," under which "[t]he 'who' are the defendants; the 'what' are their allegedly misleading claims; the 'when' is the proposed class period, during which those

claims were made; the 'where' is the offending label; and the 'how' is the plaintiff's explanation why the defendant's claims are misleading.").  Indeed, the Second Circuit Court of Appeals has rejected the precise proposition advanced by Post, explaining: "The rule that Defendant [urges] – that, as a matter of law, it is not misleading to state that a product is made with a specified ingredient if that ingredient is in fact present – would validate highly deceptive advertising and labeling. . . .[and] would validate highly deceptive marketing."

*Mantikas,* 910 F.3d at 638.  This rationale is sound and should be followed here.

**C. Under the facts as alleged, a reasonable consumer is not expected to read the fine-print ingredient list on the side of the packaging to discover the truth about Post's deceptive principal display panel, and imposing such a requirement would contravene Ninth Circuit governing authority.**

Defendant argues that "to the extent there was any ambiguity as to the ingredients in Honey Bunches of Oats, a reasonable consumer would check the familiar ingredient list on the side of the box."  MTD at 17.  Defendant is wrong.

First, Plaintiff's allegations do not reflect any ambiguity in Defendant's front panel labeling. The Amended Complaint asserts in no uncertain terms that Defendant's labeling conveys the unambiguous message that honey is the Product's predominant sweetener.

Second, Post's position flatly contradicts Ninth Circuit's authority of *Williams v. Gerber*:

> [R]easonable consumers should [not] be expected to look beyond mis-leading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. . . . ***We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.***

552 F.3d at 939–40 (emphases supplied).    As a fellow California federal district judge explained in the course of rejecting two of the cases cited by Defendant here:

> Notwithstanding the Ninth Circuit's holding in *Williams*, Defendant relies upon certain district court decisions that have arrived at the opposite conclusion. *See, e.g.*, *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 922 (N.D. Ill. 2017); *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015)…This Court [however] is bound to follow *Williams*.

*Robinson v. Unilever United States, Inc.*, 2019 WL 2067941, at *3 (C.D. Cal. Mar. 25, 2019) (parenthetical quotations omitted).  Here, as in *Robinson*, the Court should follow established Ninth

16

Circuit precedent and decline to follow the outlier cases relied upon by Defendant.[8]

Post also argues Plaintiff "must be familiar with ingredient lists" because the allegations in his pleading draw information from them.  MTD at 17, 19.  This is just another attempt at obfuscation, and is disingenuous to boot.  Clearly, that Plaintiff reviewed ingredient lists at some point *following* his purchases while his counsel drafted the Complaint hardly means that he was (or should have been) familiar with them prior to or at the point of purchase, as *Williams* demonstrates.

### D.  Plaintiff's allegations regarding the consumer survey are adequately pled.

The consumer survey conducted by Plaintiff in August, 2019, is not necessary to establish that conduct was misleading or deceptive under the reasonable consumer test.  *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008) (holding that while "[s]urveys and expert testimony regarding consumer assumptions and expectations may be offered," they are not required to prove consumers held a false belief communicated by the advertisements).  Nonetheless, the survey confirms the merit of Plaintiff's claims.

Defendant speculates about the reliability of the survey, but the principle is well-established that "when 'consumer survey data is incorporated into . . . [a complaint], . . . the Court must presume its truth on a motion to dismiss, even if a defendant has raised colorable arguments as to the reliability of the survey methodology." *Shalikar v. Asahi Beer U.S.A., Inc.*, 2017 WL 9362139 at *7 (C.D. Cal. Oct. 16, 2017).  "This rule arises from the well-established principle that 'any weighing of evidence is inappropriate on a 12(b)(6) motion.'"  *Id.; accord, Branca v. Nordstrom, Inc.*, 2015 WL 10436858 at *7 (S.D. Cal. Oct. 9, 2015) ("The consumer survey data is incorporated into Plaintiff's [complaint], therefore the Court must presume its truth.").  Thus, in *Joseph v. J.M. Smucker Company,* 2019 WL 1219708 at *3 (C.D. Cal. Mar. 13, 2019), a sampling of over 400

---

[8] In addition to not following *Williams,* the court in *In re 100% Grated Parmesan Cheese* employed an erroneous iteration of the reasonable consumer test, stating: "while a reasonable consumer, lulled into a false sense of security by an ***unavoidable interpretation*** of an allegedly deceptive statement, may rely upon it without further investigation, consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight." *In re 100% Grated Parmesan Cheese*, 275 F. Supp. 3d at 922–23.  California law does not require that a challenged representation be susceptible to an "unavoidable interpretation" in order to support a claim of deceptive or misleading conduct.  To the contrary, at the pleading stage dismissal is only appropriate where it would be "impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived."  *Williams*, 552 F. 3d at 939.

consumers was deemed satisfactory to defeat a Rule 12(b)(6) motion despite the fact that defendant "speculate[d] that the survey 'could be a complete fabrication' and 'could have been conducted by Plaintiff's counsel themselves at a backyard barbeque.'" The court reiterated the basic rule: "that the [complaint] does not incorporate details about the survey's methodology does not disqualify it from the court's consideration." *Id.*   Similarly, in *Shalikar*, 2017 WL 9362139 at *8, the court credited the survey despite "the absence of allegations about its methodology or reliability" and the fact that defendant raised "as to how the questions were asked and how the Product was displayed."

Even if the Court were to consider Defendant's criticisms, they would be found wanting. Defendant states that Plaintiff "does not allege who designed or administered the survey, the name of the survey, how it was conducted, what precise questions were asked, whether the responses were open-ended or closed-ended, or any other details that would suggest the survey is reliable" (MTD at 19–20), but the case law does not require Plaintiff to provide this level of detail. *Shalikar*, 2017 WL 9362139 at *7; *Branca*, 2015 WL 10436858 at *7.

Defendant's additional arguments are equally unavailing.  Defendant says that consumer survey results "cannot salvage a claim that lacks any additional plausible allegations supporting a likelihood of deception" (MTD at 20), but – as shown - Plaintiff's other allegations are sufficiently plausible to sustain his claims.  Post also contends that the survey was flawed because "it only depicted the front of the cereal package leaving respondents no option to check the ingredient list." MTD at 21.  This argument is misplaced as it requires reasonable consumers to check the ingredient list prior to purchase, a notion firmly rejected by the Ninth Circuit in *Williams v. Gerber.*

> **E.  The decision in *Lima* should not help Post here: the court erred in relying on the FDA flavoring regulation; the court did not have the benefit of a consumer survey; and, its treatment of the reasonable consumer standard is inconsistent with Ninth <u>Circuit law; moreover, the decision is on appeal.</u>**

Post asks that the Court adopt the rationale and conclusion of *Lima v. Post Consumer Brands, LLC,* 2019 WL 3802885 (D. Mass. Aug. 13, 2019).  For several reasons, the Court should not do so.

First, the *Lima* court fundamentally erred in accepting Post's "flavor labeling" defense.  Most significantly, it concluded that Post's compliance with the FDA's flavor labeling regulation would render the Product's labeling *per se* lawful as to sweeteners (*id.,* at *6), which is simply not true.  *See* discussion at II.C-D, *supra*.  The court compounded this error by finding that Plaintiffs admitted honey was the Product's "primary recognizable flavor," citing to paragraph 32 of the First Amended Complaint, but that paragraph actually states the opposite:

> The branding and packaging of "Honey Bunches of Oats" cereals is not accurate or justifiable on the basis that honey is the primary or characterizing flavor.  Each of the Products contains flavoring ingredients in much greater quantities than honey, and many of these ingredients – such as molasses, brown sugar, nuts, and dried fruit – have flavor characteristics that are far more distinctive than honey.  Indeed, even a cereal variety that doubles-down on honey – "Honey Bunches of Oats, Crunchy Honey Roasted" – contains a number of flavoring ingredients that are present in greater pro-portions than honey.

*See* First Amended Complaint, *Lima v. Post*.  Consequently, this aspect of the *Lima* ruling should not sway the Court here.

Second, the *Lima* court found Plaintiffs did not meet the reasonable consumer test because "they do not explain why they concluded that the word honey and the associated imagery necessarily meant that honey was the primary sweetener, rather than referring to the flavor of the cereal." *Id.,* at * 5.  But the distinction between honey as a sweetener and honey as a flavor is a patently false one, at least at the pleading stage of the case.  Given that honey is undeniably a sweetener – as numerous authorities (including the FDA) and the consuming public recognize – Plaintiffs had no burden to explain, in response to a Rule 12(b)(6) motion, why they perceived it as such. The court thus imposed on plaintiffs a burden that went well beyond the reasonable consumer test.   The ruling was particularly perplexing given that the court understood that a federal district judge had ruled to the contrary in *Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137 (C.D. Cal. 2010).

Third, the *Lima* court also ruled that plaintiffs in that case, had they been reasonable consumers, would have checked the fine print ingredient list to dispel any ambiguity about the amount of honey. This, however, is certainly not the law in the Ninth Circuit, where this very argument was rejected in *Williams v. Gerber*.

Finally, *Lima* is on appeal and expected to be overturned.

## III.  **PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF.**

In *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), the Ninth Circuit held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id.* at 969.  This standard is satisfied when a plaintiff alleges "that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 970.  Here, Plaintiff alleges that he "would consider purchasing the cereal again if the labeling were accurate." Amd. Comp. ¶ 44.  Therefore, Plaintiff's claim for equitable relief aligns with *Davidson* and the Article III standing requirement is satisfied.

Defendant's reliance on *Lanovaz v. Twminings N. Am., Inc.*, Fed. Appx. 590, 591 (9th Cir. 2018), a summary judgment ruling, is misguided, as there plaintiff had testified at her deposition "that she would not purchase Twinings products again, even if the company removed the allegedly misleading labels."  Here, in stark contrast, the case is at the pleading stage and Plaintiff's allegation that he would consider purchasing the Product again must be taken as true.  Equally unavailing is Defendant's speculative argument that in the future Plaintiff will be able to "easily determine whether the amount of honey relative to other sweeteners has changed."  MTD at 24.  This is impossible to predict for a host of reasons, including the fact that specific amounts of specific sweeteners are not listed anywhere on the package (including the ingredient list).  Thus, Plaintiff can only "assume the product was improved," an assumption that could prove incorrect.  *Davidson,* 889 F. 3d at 970.

## IV. PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND ANY ASPECT OF THE COMPLAINT THAT IS DEEMED DEFICIENT

Although Plaintiff believes that the Complaint is adequately pled in all respects, Plaintiff requests leave to amend any aspect which the Court may deem deficient. Federal Civil Procedure Rule 15(a)(2) provides that "the court should freely give leave when justice so requires," and the Ninth Circuit has ruled that this policy is to be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1501 (9th Cir. 2003). Here, where there has been no prior ruling on the sufficiency of Plaintiff's allegations, granting leave to amend would be in accord with the letter and spirit of Fed. R. Civ. P. 15(a).

## V. PLAINTIFF'S UCL AND FAL CLAIMS SHOULD NOT BE DISMISSED.

Post asks the Court to dismiss Plaintiff's UCL and FAL claims for injunctive and other equitable relief because Plaintiff is seeking damages under the CLRA. However, as this Court has ruled, this is simply not a basis for barring the right to equitable relief conferred by those statutes.

The UCL and the FAL each provide that their remedies are cumulative to those available under other laws: "Unless otherwise expressly provided, the remedies or penalties provided by this chapter are ***cumulative*** to each other and to the remedies or penalties available under all other laws…" Cal. Bus. & Prof. Code § 17205, §17534.5 (emphasis added). The CLRA similarly provides: "[t]he remedies provided herein for violation of any section of this title or for conduct proscribed by any section of this title shall be in addition to any other procedures or remedies for any violation or conduct provided for in any other law." Cal. Civ. Code § 1752. Thus, in *Luong v. Subaru of Am., Inc.*, 2018 WL 2047646 at *7 (N.D. Cal. May 2, 2018)(Gonzalez Rogers, J.)., this Court reasoned: "the fact that there are alternative remedies under a specific statute does not preclude a UCL remedy, unless the statute itself provides that the remedy is to be exclusive." *See also Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 179 (2000) ("UCL remedies are cumulative to remedies available under other laws (§ 17205) and, as section 17203 indicates, have an independent purpose—deterrence of and restitution for unfair business practices."); *Safransky v. Fossil Grp., Inc.*, 2018 WL 1726620 at *14 (S.D. Cal. April 9, 2018) ("Put simply, a plaintiff seeking

21

1   damages is not automatically precluded from obtaining UCL relief); *Joseph,* 2019 WL 1219708 at

2   *6  ("the court has no difficulty rejecting defendant's final ground for dismissal, i.e., that plaintiff's

3   UCL, FAL and restitution claims fail because they seek injunctive relief, and monetary damages are

4   adequate").

5          In addition, under California law "plaintiffs may seek injunctive and/or restitutionary

6   equitable relief separate and apart from the same underlying claims (i.e., attorney malpractice,

7   breach of fiduciary duty, and fraud) in which plaintiffs seek monetary damages." *Estakhrian v.*

8   *Obenstine*, 233 F.Supp.3d 824, 846 (C.D. Cal. 2017). Thus courts, including this Court, have

9   consistently held that plaintiffs should be permitted to pursue equitable claims in the alternative to

10  legal remedies at the pleading stage. *See*, *Luong* 2018 WL 2047646 at *7 ("The Court finds those

11  decisions allowing claims for equitable relief to proceed as an alternative remedy, at the pleading

12  stage, to be more persuasive, based upon the broad remedial purposes of the California consumer

13  protection statutes."); *Aberin v. Am. Honda Motor Co.*, 2018 WL 1473085 at *9 (N.D. Cal. Mar. 26,

14  2018) (same).

15         Accordingly, Defendant's argument must be rejected.

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO MOTION DISMISS**
**Case No.: 4:19-cv-03993-YGR**

## CONCLUSION

For the foregoing reasons, Post's motion to dismiss should be denied in its entirety. However, to the extent the Court believes any claim is insufficiently pled, Plaintiff should be granted a reasonable opportunity to amend in order to cure any such deficiency.

Respectfully submitted:

November 12, 2019                                   **REESE LLP**

                                          By:    */s/ Michael R. Reese*
                                                 Michael R. Reese (Cal. State Bar No. 206773)
                                                 100 West 93rd Street, 16th Floor
                                                 New York, New York  10025
                                                 Telephone: (212) 643-0500
                                                 Facsimile: (212) 253-4272
                                                 *mreese@reesellp.com*

                                                 George V. Granade (Cal State Bar No. 316050)
                                                 **REESE LLP**
                                                 8484 Wilshire Boulevard
                                                 Los Angeles, California 90211
                                                 Telephone: (212) 643-0500
                                                 *ggranade@reesellp.com*

                                                 **QUAT LAW OFFICES**
                                                 Kenneth D. Quat (admitted *pro hac vice*)
                                                 929 Worcester Road
                                                 Framingham, Massachusetts  01701
                                                 Telephone: (508) 872-1261
                                                 *ken@quatlaw.com*

                                                 **FORREST, LAMOTHE, MAZOW
                                                    McCULLOUGH, YASI & YASI, PC**
                                                 Michael C. Forrest (Cal. State Cal No. 303414)
                                                 3998 Chestnut Avenue
                                                 Concord, California 94519
                                                 Telephone:  (415) 579-9481
                                                 *Mforrest@forrestlawmothe.com*

                                                 *Counsel for Plaintiff Peter C. Tucker
                                                 and the Proposed Class*

23